UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BEN BRINKMANN, HANK BRINKMANN, and MATTITUCK 12500 LLC.,

Plaintiffs,

v.

TOWN OF SOUTHOLD, NEW YORK,

Defendant.

**MEMORANDUM AND ORDER**

21-CV-2468 (LDH) (JMW)

LASHANN DEARCY HALL, United States District Judge:

Plaintiffs Ben Brinkmann, Hank Brinkmann, and Mattituck 12500 LLC bring the instant action against Defendant Town of Southold, New York pursuant to 42 U.S.C. § 1983 for a violation of their rights under the Takings Clause of the Fifth Amendment to the United States Constitution. Plaintiffs move pursuant to Rule 65 of the Federal Rules of Civil Procedure for a preliminary injunction to enjoin Defendant from acquiring their property by eminent domain.

**BACKGROUND**[1]

Plaintiffs Ben and Hank Brinkmann operate a chain of hardware stores on Long Island, New York. (Complaint ("Compl.") ¶ 17–18, ECF No. 1.) Defendant Town of Southold is a municipal corporation organized under the laws of New York. (*Id.* at ¶ 12.) In 2016, Plaintiffs Ben and Hank Brinkmann, through their wholly owned company Plaintiff Mattituck 12500 LLC, purchased approximately 1.75 acres of property in the Town of Southold (the "Property"). (*Id.* at ¶¶ 4, 11, 28.) Plaintiffs purchased the Property with the intention of opening a new hardware

[1] The following facts are drawn from Plaintiffs' complaint and the declarations in support of the parties' memoranda of law.

store location in Southold. (*Id*. at ¶ 4, 23, 28.) Before Plaintiffs could obtain a building permit for the new store, Defendant enacted a moratorium on building permits covering all properties situated on the stretch of road where the Property is located. (*Id*. at ¶¶ 82–83.) Then, in September 2019, Defendant adopted a resolution to acquire the Property via eminent domain for use as a public park. (June 29, 2021 Decl. James Catterson ("Catterson Decl."), Ex. 1, ECF No. 20-2.) Thereafter, Defendant initiated the process of acquiring the Property under New York Eminent Domain Procedure Law ("EDPL"). (*Id*. at Ex. 3, ECF No. 20-4.). In September 2020, following a public hearing, Defendant issued its "findings and determinations," which found Defendant's proposed use for the Property as a park to be a valid public purpose for acquisition by eminent domain. (Compl. ¶¶ 100–102). Plaintiffs did not challenge the public use determination. (*Id*. at ¶¶ 108–109.)

**DISCUSSION**

**I. The Anti-Injunction Act**

Under the Anti-Injunction Act, federal courts are generally precluded from enjoining state court proceedings. 28 U.S.C. § 2283; *see also MLE Realty Assocs. v. Handler*, 192 F.3d 259, 261 (2d Cir. 1999) ("The [Anti-Injunction] Act is 'an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions.'" (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970))). However, this general rule is excepted where the injunction (1) is expressly authorized by Act of Congress, (2) necessary in aid of its jurisdiction, or (3) operates to protect or effectuate the court's judgments. 28 U.S.C. § 2283. Defendant maintains that under the Anti-Injunction Act the Court lacks the authority to grant the relief sought by Plaintiffs—a stay of the state court

condemnation proceeding. (Def.'s Mem. L. Opp. Pls.' Mot. Prelim. Inj. ("Def.'s Opp'n") 8–9, ECF No. 20.) The Court disagrees.

Plaintiffs' claim is brought pursuant to 18 U.S.C. § 1983, as Defendant is undoubtedly aware. (*See* Compl. ¶¶ 13, 111.) Nonetheless, without any reference to § 1983, Defendant makes the naked assertion that "there is no act of congress that expressly authorizes an injunction against state condemnation proceedings during the pendency of a federal constitutional challenge." (Def.'s Opp'n 8.) Defendant's argument conveniently ignores long standing Supreme Court precedent.[2] In *Mitchum v. Foster*, the Supreme Court answered the question of whether § 1983 satisfies the first exception under the Anti-Injunction Act. 407 U.S. 225 (1972). Its decision was unequivocal: "[W]e conclude that, under the criteria established in our previous decisions construing the anti-injunction statute, [§] 1983 is an Act of Congress that falls within the 'expressly authorized' exception of that law." *Id*. at 242–43. The Anti-Injunction Act does not bar relief here.

## II. Preliminary Injunction

"'[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion.'" *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (alteration and emphasis in original) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). To obtain a preliminary injunction, a moving party must show "(1) that he or she will suffer irreparable harm absent injunctive relief, and (2) either (a) that he or she is likely to succeed on the merits, or (b) that there are sufficiently serious

[2] As irony would have it, so too did the Court. Because this Court's July 6, 2021 denial of Plaintiffs' motion for preliminary injunction was premised on the Anti-Injunction Act (and purported waiver), it was in error and is vacated accordingly. However, for the reasons set forth below, Plaintiffs' motion for a preliminary injunction is denied on other grounds.

questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotations and citations omitted). Where, as here, a plaintiff moves to enjoin a taking by eminent domain, "the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." *Woodfield Equities, L.L.C. v. Inc. Vill. of Patchogue*, 357 F.Supp. 2d 622, 635 (E.D.N.Y.) (quoting *Bery v. City of New York*, 97 F.3d 689, 694 (2d Cir. 1996)), *aff'd*, 156 F. App'x 389 (2d Cir. 2005). Plaintiffs have not.

**A. Likelihood of Success on the Merits**

"[E]minent domain is 'a fundamental and necessary attribute of sovereignty, superior to all private property rights.'" *Goldstein v. Pataki*, 516 F.3d 50, 57 (2d Cir. 2008) (quoting *Rosenthal & Rosenthal, Inc. v. New York State Urban Dev. Corp.*, 771 F.2d 44, 45 (2d Cir. 1985)). That said, the right of a sovereign to invoke its authority under eminent domain is not without limit. Under the Fifth Amendment, a sovereign is prohibited from the taking of private property "without just compensation." U.S. Const., amend V. Likewise, and of particular relevance here, any taking must be for "public use." *See id.* ("[N]or shall private property be taken for public use, without just compensation.").

Plaintiffs argue that Defendant has run afoul of the Fifth Amendment's public use clause because the purported purpose for taking the Property—to build a park—is a mere pretext for the true purpose—to prevent Plaintiffs from operating a lawful business. (Pls.' Mem. L. Supp. Mot. Prelim. Inj. ("Pls.' Mem."), 12, ECF No. 18-1.) In other words, Plaintiffs contend that Defendant is acting in bad faith. (Mot. 9.) Even if true, this fact does not provide a basis for relief. Of course, as recognized by the Supreme Court in *Kelo v. City of New London,*

*Connecticut*, a sovereign may not take property "under the mere pretext of a public purpose, when its actual purpose [is] to bestow a private benefit." 545 U.S. 469, 478 (2005); *see also Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 245 (1984) ("A purely private taking could not withstand the scrutiny of the public use requirement[.]"). But this is not Plaintiffs' complaint. Plaintiffs do not argue that Defendant does not intend to build a park on the Property. Nor do Plaintiffs contend that the proposed park would not be used for a public purpose. Indeed, Plaintiffs' argument ignores entirely any question related to how the Property would be used by Defendant, instead focusing on how the Property will not be used by Plaintiffs absent an injunction. As Defendant rightly argues, to prevail, Plaintiffs must demonstrate that the purpose of the taking is to bestow a private benefit. *See Goldstein v. Pataki*, 488 F.Supp. 2d 254, 288 (E.D.N.Y. 2007) ("*Kelo* requires [a plaintiff] to allege that the 'actual purpose' of the Project is 'to bestow a private benefit[.]'" (quoting *Kelo*, 545 U.S. at 478))), *aff'd*, 516 F.3d 50 (2d Cir. 2008). Because Plaintiffs fail to even make such an allegation, their takings claim is unlikely to succeed.

Plaintiffs' cited authority does not persuade the Court that a different outcome is warranted. Putting aside that the cases relied on by Plaintiffs are each non-binding state court cases from various jurisdictions, they are inapposite to the case at bar. According to Plaintiff, the Pennsylvania Supreme Court's decision in *Middletown Township v. Lands of Stone* stands for the proposition that "a taking is pretextual when it is used . . . to prevent people from making lawful uses of their property." (Pls.' Mem. 14.) That is simply not the case. The court in *Middletown Township v. Lands of Stone* was asked to determine whether the taking at issue was proper under local regulation and Pennsylvania's Open Space Lands Act. 939 A.2d 331, 333 (Pa. 2007). And indeed, the court held that the taking was prohibited. *Id*. at 340. Under local and state

regulation, the township's authority was limited to takings made for the purpose of public recreation. *Id*. at 337. Ultimately, the Court concluded that the "true purpose" of the proposed taking did not comport with the limitations under the law. *Id*. at 340. Here, again, Plaintiffs do not argue that the "true purpose" of Defendant's taking falls outside a permissible use. Instead, and in effect, Plaintiffs argue that the permissible purpose of Defendant's taking—use as a public park—is impermissibly motivated by Defendant's effort to "to stop the Brinkmanns." (Pls. Mem. 16.) In other words, Plaintiffs do not challenge the proposed *use*, but rather the *motivation* for the use. No reading of *Middletown Township v. Lands of Stone* supports such challenge.

*Pheasant Ridge Associates Limited. Partnership v. Town of Burlington*, 506 N.E.2d 1152 (Mass. 1987) and *Earth Management, Inc. v. Heard County*, 283 S.E.2d 455 (Ga. 1981), also cited by Plaintiffs, are equally unavailing. In each of these dated state court cases, the court addressed, in part, whether a taking for a public use, made in bad faith, was impermissible. It is not readily apparent whether either court was analyzing the propriety of the challenged taking under the U.S. Constitution, the state's constitution, or other authority. In any event, this Court is not fully convinced that a "bad faith inquiry" is an appropriate one under the Fifth Amendment. Indeed, Plaintiffs fail to cite a single case which concludes that it is. At best, Plaintiffs' cases reveal that at some point the Supreme Court and the Second Circuit had not ruled out such an inquiry. *See United States v. 0.16 of an Acre of Land, More or Less, Situated in Suffolk Cty., State of N.Y.*, 517 F. Supp. 1115, 1120 (E.D.N.Y. 1981) ("It has not been determined in this circuit whether [bad faith] is a defense to a taking." (first citing *United States v. Carmack*, 329 U.S. 230 (1946); then citing *United States v. New York*, 160 F.2d 479 (2d Cir.), *cert. denied*, 331 U.S. 832 (1947))). That said, none of the more recent authority from either court provides for a

bad faith analysis.[3] Indeed, in *Goldstein v. Pataki*, the Second Circuit suggests that an inquiry into the motives underpinning a taking is not permitted under the Supreme Court's longstanding precedent:

> Prior to *Kelo*, it was well settled that 'it is only the taking's purpose, and not its mechanics that must pass scrutiny under the Public Use Clause. Accordingly, we must reject the notion that . . . federal courts in all cases [are required] to give close scrutiny to the mechanics of a taking rationally related to a classic public use as a means to gauge the purity of the motives of the various government officials who approved it.
>
> 516 F.3d at 62 (quoting *Midkiff*, 467 U.S. at 244) (citing *Kelo*, 545 U.S. at 483).

This Court declines Plaintiffs' invitation to gauge Defendant's motives here. Because Plaintiffs provide no other basis to find Defendant's taking impermissible, they are unlikely to succeed.

**B. Irreparable Harm**

Irreparable harm is injury that is "'incapable of being fully remedied by monetary damages.'" *Medgar Evers Houses Assocs., L.P. v. Carro*, No. 01-CV-6107, 2001 WL 1456190, at *4 (E.D.N.Y. Nov. 6, 2001) (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990). Relying on *Carpenter Technology v. City of Bridgeport*, 180 F.3d 93, 97 (2d Cir. 1999), Plaintiffs argue that they risk irreparable harm because real property is at issue[4] and

[3] A bad faith analysis may be warranted if Plaintiffs brought a substantive due process claim. That is, in evaluating a substantive due process claim, a court must ask whether the violation is arbitrary or capricious. *See 49 WB, LLC v. Vill. of Haverstraw*, 511 F.App'x 33, 34–35 (2d Cir. 2013) ("'For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels arbitrary and outrageous' . . . [for example] with 'racial animus' or 'fundamental procedural irregularity.'" (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999))). This of course is neither here nor there, as Plaintiffs failed to bring a substantive due process claim.

[4] It is unclear whether Plaintiffs contend that they are entitled to a finding of irreparable harm solely because real property is at issue. To the extent Plaintiffs advance such an argument, it fails. Certainly, the loss of commercial real property can constitute irreparable harm where the property possesses "uniquely valuable characteristics". *See Medgar Evers Houses Assocs.*, 2001 WL 1456190 at *4 (discussing *Carada, Ltd. v. McAuliffe*, No. 92-CV-0465E(F), 1993 WL 117525 (W.D.N.Y. 1993)). However, Plaintiffs fail to ascribe any characteristics to the Property that might render it uniquely valuable.

they are unable to obtain injunctive relief. (Pls.' Mem.. 18.) Plaintiffs' reliance on *Carpenter Technology* is misplaced. According to Plaintiffs, *Carpenter Technology* "squarely held that a pending condemnation in state court satisfies the irreparable harm prong of the preliminary injunction test." (*Id.*) Plaintiffs plainly overstate the court's ruling. Yes, the court in *Carpenter Technology* found irreparable harm in connection with a pending condemnation. 180 F.3d at 97. However, critical in the court's determination was the fact that plaintiff had no adequate remedy at law under the relevant Connecticut condemnation statute. *Id.* (citing *Simmons v. State*, 280 A.2d 351, 356 (Conn. 1971)). That is, the law did not permit judicial review of a condemnation prior the transfer of "title to the property and the right to possession." *Simmons*, 280 A.2d at 356. No such inadequacy exists here. Under New York's eminent domain law, "[a]ny person . . . aggrieved by the condemnor's determination and findings . . . may seek judicial review thereof . . . within thirty days after the condemnor's completion of its publications of its determination and findings[.]" N.Y. Em. Dom. Proc. Law § 207. Plaintiffs concede that they did not challenge Defendant's findings and determinations under the EDPL. (Compl. ¶ 108.) Because Plaintiffs failed to timely challenge Defendant's determination and findings, they are now precluded from doing so. *See* N.Y. Em. Dom. Proc. Law § 207. In effect, Plaintiffs ask the Court to construe their failure to avail themselves of their rights under the EDPL as irreparable harm. The Court refuses to do so. The question is whether there is an adequate remedy at law, not whether Plaintiffs have availed themselves of it. *Carpenter Technology*'s reasoning is therefore inapplicable.

Plaintiffs' remaining argument is also without merit. According to Plaintiffs, their risk of irreparable harm is heightened because of the parties' ongoing litigation over Defendant's permit moratorium. (Pls.' Mem. 18.) However, Plaintiffs do not explain how the ongoing litigation

should factor into the Court's analysis. Tellingly, Plaintiffs provide no legal basis for their argument. Perhaps this is because Plaintiffs' argument is little more than a repackaging of their bad faith arguments already rejected by this Court. Plaintiffs fail to demonstrate irreparable harm.[5]

**CONCLUSION**

Based on the foregoing, Plaintiffs' motion for preliminary injunction is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
September 20, 2021

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge

[5] Having found Plaintiffs' claim is unlikely to succeed and that they have not demonstrated irreparable harm, the Court need not endeavor to balance the parties' purported hardships.