**FILED**
**CLERK**

June 20, 2023

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

BEN BRINKMANN *et al.*,

                    Plaintiffs,

          -against-

TOWN OF SOUTHOLD, NEW YORK,

                    Defendant.

------------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

21-cv-2468 (LDH) (JMW)

**A P P E A R A N C E S:**

Jeffrey H. Redfern, Esq.
William R. Aronin, Esq.
**Institute for Justice**
901 N. Glebe Rd, Suite 900
Arlington, VA 22203
*Attorneys for Plaintiffs*

Arif Panju, Esq.
**Institute for Justice**
816 Congress Avenue, Suite 960
Austin, TX 78701
*Attorney for Plaintiffs*

Brianna Walsh, Esq.
James M. Catterson, Esq.
**Pillsbury Winthrop Shaw Pittman LLP**
31 West 52nd Street
New York, NY 10019
*Attorneys for Defendant*

Damon Andrew Hagan, Esq.
**Law Office of Damon Hagan**
8 Harbor Lane
East Quogue, NY 11942
*Attorney for Defendant*

**WICKS,** Magistrate Judge:

Plaintiffs Ben Brinkmann ("Ben"), Hank Brinkmann ("Hank"), and Mattituck 12500 LLC, commenced this action against Defendant Town of Southold, New York, pursuant to alleged violations of the Civil Rights Act under 42 U.S.C. § 1983.  (DE 1.)  Before the undersigned is Defendant's counsel's motion for costs and attorney's fees following dismissal of the case.  (DE 48.)  For the reasons that follow, the undersigned respectfully recommends Defendant's counsel's motion be granted in part.

## BACKGROUND

Ben, Hank, and their sister Mary Brinkmann operate several hardware stores in Long Island.  (Compl. ¶¶ 15-19, DE 1.)  Plaintiffs sought to expand their business by purchasing a vacant lot in Southold, New York, but Bridgehampton National Bank purchased the land.  (*Id*. ¶¶ 23-25.)  In 2016, Plaintiffs contracted with the bank to purchase the lot for $700,000; the contract included a due diligence provision to ensure the land was suitable for development.  (*Id*. ¶¶ 28, 30-31.)

In May 2017, Plaintiffs met with the Southold Town Planning Department to discuss Plaintiffs' plans of opening a hardware store.  (*Id*. ¶¶ 32-35.)  In September 2017, Plaintiffs held a public meeting to discuss the new development, but residents expressed concern about the increased foot traffic the store would bring, and Southold Town Supervisor Scott Russell stated this constituted "an over-riding concern" for all applicants in this property area.  (*Id*. ¶¶ 37-41.)

Plaintiffs offered to pay for any necessary improvements, but a September 2020 traffic study showed that the store would not cause any traffic problems.  (*Id*. ¶¶ 40, 42.)

In 2017, Ben and Hank met with the former owner of the only hardware store in Mattituck who agreed to close his store in exchange for $350,000 and would be hired as a manager of the proposed store once it was developed.  (*Id*. ¶ 32.)  In January 2018, Plaintiffs made several revisions in accordance with the feedback received from meetings with the Town Planning Department.  Plaintiffs thereafter submitted a permit application to the Town Building Department, which was later denied on the basis that the Planning Department disapproved of Plaintiffs' site plan.  (*Id*. ¶¶ 45-47.)  In May 2018, Plaintiffs revised their site plan and applied once again, but Defendant told Plaintiffs they needed to obtain a special exception permit due to the size of the proposed store and that the Planning Board was obligated to conduct a Market and Municipal Impact Study to determine whether the store would negatively impact the economy. (*Id*. ¶¶ 50-52, 55.)

The former owner of the store who had initially agreed to sell to Plaintiffs doubled the original purchase price in July 2018.  (*Id*. ¶ 59.)  And Defendant also informed Plaintiffs that the Market and Municipal Impact Study would cost them $30,000.  (*Id*. ¶ 60.)  The former store owner then proposed a reduced purchase price for the store, but Plaintiffs rejected it because they suspected the store owner's attorney (the former Town Attorney) used his personal insight into Defendant's evaluation of Plaintiffs' application to justify the price.  (*Id*. ¶¶ 64-66.)

In October 2018, Southold's Town Supervisor called the president of the bank requesting that they sell the lot to Defendant and not Plaintiffs, but the bank's president refused to do so. (*Id*. ¶¶ 67-68, 75.)  The Town allegedly made further attempts to pressure the bank to terminate

the contract with Plaintiffs, which were unsuccessful.  (*Id*. ¶ 78.)  On November 20, 2018, Plaintiffs closed on the property.  (*Id*. ¶ 79.)

Although Plaintiffs paid the Market and Municipal Impact Study fee, Defendant enacted a six-month moratorium on permits within the property area.  (*Id*. ¶¶ 81, 83.)  The moratorium was extended in August 2019 and in July 2020.  (*Id*. ¶¶ 89-92.)  Plaintiffs did not apply for any waivers granted by the Town for development of the lot.  (*Id*. ¶¶ 94-95.)

In September 2020, Defendant issued a formal determination concluding that, pursuant to New York Eminent Domain Procedural Law, declaring that a park on the property would constitute a "public use."  (*Id*. ¶¶ 100-01.)  Defendant then authorized acquisition of Plaintiffs' property for use as a park.  (*Id*. ¶¶ 102.)  A few months after this determination, Plaintiffs commenced this action claiming, in essence, an unconstitutional taking.  (DE 1.)

## PROCEDURAL HISTORY

Plaintiffs filed their Complaint on May 4, 2021.  (*Id*.)  The Complaint alleges violations of the Fifth Amendment and 28 U.S.C. § 1983 in that Defendant unlawfully attempted to seize private property from Plaintiffs, via eminent domain, for the specific purpose of preventing Plaintiffs from operating a hardware store, which allegedly satisfies all other zoning and regulatory requirements.  (*Id*. ¶ 1.)  They alleged that the Town's stated purpose of turning the property into a park concealed its actual purpose, which was designed solely to prevent Plaintiffs from developing a store on the property.  (DE 1 ¶¶ 2-3.)  Plaintiffs later learned that Defendant filed a condemnation action in state court on May 5, 2021.  (*Id*.)

Plaintiffs moved for a preliminary injunction to prevent Defendant from acquiring the property (DE 18), which was ultimately denied on September 20, 2021 by the Hon. LaShann DeArcy Hall.  (DE 28.)  The Court then issued a formal memorandum and order denying

4

Plaintiffs' motion for a preliminary injunction.  (DE 28.)  On October 20, 2021, Plaintiffs

appealed the Court's decision (DE 33), which was later withdrawn.  (DE 37.)

Judge DeArcy Hall ultimately granted Defendant's motion to dismiss the Complaint in its

entirety.  (DE 44; *see* Electronic Order dated Sept. 30, 2022.)  On October 18, 2022, Plaintiffs

appealed Judge DeArcy Hall's Order.  (DE 47.)  On May 3, 2023, oral argument was heard on

whether the district court's decision should be reversed; the appeal is still pending.  *Brinkmann v.*

*Town of Southold, New York*, No. 22-2722 (2d Cir. 2022).[1]

Before the undersigned is Defendant's motion for attorney's fees and costs in the amount

of $206,748.47 (DE 48), which was referred to the undersigned by Judge DeArcy Hall on

November 16, 2022.  Plaintiffs oppose Defendant's counsel's motion.  (DE 50.)

The Court first considers whether Defendant is a "prevailing party" within the meaning

of § 1988, and then whether Plaintiffs' claims were "frivolous."

## **DISCUSSION**

### **A.  Whether Defendant is a Prevailing Party and Plaintiffs' Claims were Frivolous**

#### **a.  Legal Standard**

Typically, litigants must pay for their own attorney's fees and expenses; however, certain

fee-shifting statutes award fees to the prevailing party.  *Belton v. Borg & Ide Imaging, P.C.*, 585

F. Supp. 3d 323, 328 (W.D.N.Y. 2022).  Section 1988 is just one of those statutes that provides

---

[1] Despite the pending appeal, this Court retains jurisdiction in deciding the instant motion concerning attorney's fees and costs. *Tancredi v. Metropolitan Life Ins. Co.*, 378 F.3d 220, 225-26 (2d Cir. 2004) (noting that the 1993 Advisory Committee notes to Rule 54(d) provides district courts with the option to rule on claims for fees, defer ruling on them, or deny the motion without prejudice until after the appeal is resolved and choosing to decide attorney's fees in a § 1988 case where plaintiffs' case was dismissed); *Neroni v. Becker*, 609 Fed. Appx. 690, 692 (2d Cir. 2015) (rejecting plaintiffs' argument that the district court lacked jurisdiction to rule on defendants' claim for attorneys' fees because of pending appeal); *Hunter v. Town of Chili*, 09-CV-6285, 2010 U.S. Dist. LEXIS 27645, at *2-3 (W.D.N.Y. Mar. 24, 2010) ("[A] district court retains jurisdiction to decide the issue of attorneys' fees and other collateral matters notwithstanding a pending appeal.").

fee awards to successful parties when suits are brought under 42 U.S.C. § 1983.  Although a rarity, § 1988 allows courts to award attorney's fees to prevailing defendants.  *Torcivia v. Suffolk Cty.*, 437 F. Supp. 3d 239, 247 (E.D.N.Y. 2020).  Defendants are considered the "prevailing party" when they secure a judgment on the merits or otherwise succeed on a significant issue in the case, though they need not prevail on every claim.  *Id.* at 248; *Tatum v. City of New York*, No. 06-cv-4290 (PGG)(GWG), 2010 U.S. Dist. LEXIS 7748, at *8 (S.D.N.Y. Jan. 28, 2010).

In the Second Circuit, it is not the norm to award attorney's fees to prevailing defendants because of the "potential chilling effect" on plaintiffs in § 1983 cases who wish to vindicate their rights against those who violate the federal law.  *Robinson v. Town of Kent*, No. 11 Civ. 2875 (ER), 2012 U.S. Dist. LEXIS 102992 at *28-29 (S.D.N.Y. July 24, 2012) (citing *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994)).  And, "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation," which can essentially discourage all claims from being brought forward.  *Torcivia*, 437 F. Supp. 3d at 248 (citing *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 421-22 (1978)).

District courts can award defendants attorney's fees under § 1988 if they succeed and only if they demonstrate that "plaintiff's action was frivolous, unreasonable, or without foundation."  *Torcivia*, 437 F. Supp. 3d at 248 (internal citations omitted).  "A claim is frivolous 'when it lacks an arguable basis either in law or in fact.'"  *Id.* (citing *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004)).  On the other hand, claims are not frivolous if plaintiff has made a sufficient showing to prevent summary judgement or has presented sufficient evidence at trial to

prevent entry of judgment against him.  *Torcivia*, 437 F. Supp. 3d at 248 (finding plaintiff had

some frivolous and non-frivolous claims because certain claims survived summary judgment).

When deciding whether a claim is frivolous, courts look to whether plaintiffs have made

a claim that lacks any legal or factual basis or continued to litigate the case after it clearly

became frivolous.  *See Olivieri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir. 2004) (noting that

courts may award prevailing defendants attorneys' fees "only if the court finds that the plaintiff's

claim was 'frivolous…or that the plaintiff continued to litigate after it clearly became so'").  At

least one of the purposes of 42 U.S.C. § 1988 is to prevent plaintiffs from bringing lawsuits

without foundation.  *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S.

at 420.  "Where, as here, attorneys' fees are available by statute, a party may file a motion or

attorneys' fees after prevailing in a case."  *Fink v. Mohonk Pres. Inc.*, No. 1:20-cv-03002 (CM)

(SDA), 2020 U.S. Dist. LEXIS 131601, at *8 (S.D.N.Y. July 23, 2020).

The undersigned analyzes each of these prongs in turn to determine whether Defendant's

counsel is entitled to attorney's fees under § 1988.

**b.  Is Defendant a Prevailing Party?**

As to the first prong of the analysis, there is no question Defendant is a "prevailing

party," because it has secured a judgment on the merits in its favor—its motion to dismiss was

granted and Plaintiffs' entire Complaint was dismissed.  (DE 44.); 10 Moore's Federal Practice –

Civil § 54.171 (2023) (noting fees are available to defendant if plaintiff's claims are disposed of

and related to the merits of the underlying action).  Indeed, although uncommon, there have been

a whole host of cases in this Circuit awarding attorney's fees to defendants when a plaintiff's

claims have been dismissed or defendant has otherwise prevailed *in toto*.  *See Williams v. N.Y.*

*City Hous. Auth.*, 06-cv-5473, 2008 U.S. Dist. LEXIS 98305, at *15-16 (E.D.N.Y. Dec. 3, 2008)

(dismissing plaintiff's amended complaint against both defendants and granting defendant New York City Housing Authority's motion for attorney's fees); *Black v. Laborers Int'l Union of North America, Local 731*, No. 79 Civ. 5079 (JMC), 1982 U.S. Dist. LEXIS 11633, at *1 (S.D.N.Y. Mar. 8, 1982) (dismissing plaintiff's third amended complaint in a bench trial and awarding costs and attorney's fees to defendant under 42 U.S.C. § 1988); *Raffe v. Doe*, 619 F. Supp. 891, 897 (S.D.N.Y. 1985) (granting state defendants' motion to dismiss the complaint and private defendants' motion for summary judgment where it was clear that plaintiffs brought their claims to harass defendants and awarding fees for all defendants); *McPhatter v. Cribb*, 97-CV-0360E(F), 2000 U.S. Dist. LEXIS 7914, at *3-10 (W.D.N.Y. May 25, 2000) (finding defendant was the prevailing party since its motion for summary judgment was granted which dismissed the case and awarding it attorney's fees pursuant to § 1988); *Scanlan v. Town of Greenwich,* No. 3:18-cv-1322 (KAD), 2023 U.S. Dist. LEXIS 73338, at *12 (D. Conn. Apr. 27, 2023) (awarding attorneys' fees and costs to defendants where summary judgment was entered against plaintiff and defendant was considered the "prevailing party").

There are also similar examples of decisions from courts outside this Circuit awarding attorney's fees to defendants.  *See Irving v. Town of Camden*, No. 10-cv-00367-MJK, 2012 U.S. Dist. LEXIS 81948, at *1 (D. Me. June 13, 2012) (awarding defendant town attorney's fees after grant of summary judgment motion); *Sevier v. Hickenlooper*, 2018 U.S. Dist. LEXIS 232402, at *10-11 (D. Colo. Aug. 23, 2018) (awarding defendants attorneys' fees pursuant to § 1988 where court dismissed the case deeming the case to be frivolous); *Goldrich, Kest & Stern v. San Fernando*, 617 F. Supp. 557, 562, 565-66 (C.D. Cal. 1985) (finding the city to be the prevailing party in a § 1983 case and plaintiff should have known the claim was frivolous when the second amended complaint was dismissed and awarding fees accordingly).  Following the same pattern

of reasoning in this Circuit and those outside this Circuit, the undersigned respectfully finds that the Defendant is the prevailing party, as all claims were dismissed against it.

However, prevailing party status is only the first step when considering an award of fees under § 1988 for a defendant.  The undersigned must next determine whether Plaintiffs' claims were frivolous.  *See Opoku v. County of Suffolk*, 123 F. Supp. 3d 404, 411-412 (E.D.N.Y. 2015) (considering first whether defendants were prevailing parties then addressing whether plaintiff's suit was frivolous, unreasonable, and groundless); *Belton*, 585 F. Supp. 3d at 329 (finding "no dispute" as to whether defendants were prevailing parties and then considering whether plaintiff's claims were frivolous to warrant an attorneys' fees award to defendants).

### c.  Are Plaintiffs' Claims Frivolous?

Defendant asserts that it is entitled to recover attorney's fees after defending Plaintiffs' frivolous action in this unusual § 1983 case.  (DE 48 at 1.)  Plaintiffs, in turn, submit that their claims were not frivolous—they had a factual and legal basis for alleging Defendant violated Plaintiffs' constitutional rights under the Fifth Amendment because Defendant acted pretextually in assuming the property at issue.[2]  (DE 50 at 1.)

Specifically, Defendant argues that the Court already recognized the frivolousness of Plaintiffs' arguments when it dismissed the Complaint entirely.  (DE 48 at 6.)  Further, Defendant posits that Plaintiffs had the opportunity to contest the eminent domain designation under New York Eminent Domain Procedural Law through an Article 78 proceeding, but did not.  Instead, Plaintiffs forged ahead in this Court with the sole purpose of harassing Defendant. (*Id.*; DE 49 at 6.)

---

[2] The Takings Clause under the Fifth Amendment prohibits the taking of personal property for the benefit of another, unless for a public purpose and the owner is justly compensated.  U.S. Const., amend V.; *see also Goldstein v. Pataki*, 516 F.3d 50, 57 (2d Cir. 2008).

Plaintiffs assert that their claims were not frivolous and cite several factual allegations to support the claim that the Town's stated purpose was not the genuine purpose for taking the property.  (*Id.* at 4-5.) (pointing to several portions of the Complaint detailing the Town's efforts to prevent Plaintiffs from pursuing development through permit rejections, unacceptable fees, and exertion of undue pressure upon the former owner).  Thus, they state, these allegations are sufficient to form a foundation for their claim of pretext under the Fifth Amendment.  (*Id.* at 5.)

Further, Plaintiffs state that they need not have brought their claims in state court before bringing it in federal court, relying on *Knick v. Twp. of Scott*.  (DE 50 at 10.); *Knick*, 139 S. Ct. 2162, 2173 (2019) ("The 'general rule' is that plaintiffs may bring constitutional claims under § 1983 'without first bringing any sort of state lawsuit, even when state court actions addressing the underlying behavior are available.'").

Plaintiffs also point to seminal cases such as *Brown v. Board of Education,* 394 U.S. 294 (1955) and *Loving v. Virginia,* 388 U.S. 1 (1967) in arguing that civil rights plaintiffs represented by a public interest firm merely seeks to clarify the law and considering their claim to be frivolous would be a punitive measure.  (DE 50 at 9.)  Plaintiffs strongly contest that they brought this action solely to harass Defendant—they were represented by a public interest firm, not a "big law" firm, and sought only to retain their property.  (*Id.*)  In its reply, Defendant states that Plaintiffs' comparisons to case like *Loving* and *Brown* have no place here.  (DE 49 at 5-6.) Defendant concedes this is an unusual case in which fees should be awarded to Defendant pursuant to § 1988, but Plaintiffs did not suffer the same type of injustices, or any injustice, as was alleged in those cases.  (*Id.*)

Plaintiffs rely on *Kelo v. City of New London,* 545 U.S. 469 (2005), where the Supreme Court condemned the legislature for pretextually taking properties from private parties for

economic development yet still upheld the use of eminent domain power because there was no evidence of illegitimate purpose. (DE 50 at 5.)  Plaintiffs state that the instant situation is different because there *is not* a legitimate purpose, namely, the purpose is to prevent Plaintiffs from developing the hardware store.  (*Id.*)  However, Judge DeArcy Hall already extensively addressed Plaintiffs' misplaced reliance on *Kelo* and distinguished it from the present case. (DE 44 at 6-7.)  This was because the Second Circuit in *Goldstein v. Pataki* affirmed the "longstanding policy of deference to legislative judgments in this field."  516 F.3d at 61.  In fact, *Kelo* itself noted that the city was entitled to this judicial deference.  *Kelo*, 546 U.S. at 483.  And unlike *Kelo*, Plaintiffs here have not, and cannot, point to any evidence that demonstrates an illegitimate purpose, as the lot was taken to develop a public park and not for any individual's private benefit.

Further, in their opposition to the motion to dismiss, Plaintiffs acknowledged that there was no binding caselaw on this issue of pretext and went on to cite various state cases, most of which relied on *Kelo*.  (DE 36 at 4-12.)   Instead, Plaintiffs cite to *Rhode Island Economic Development Corp v. The Parking Co., L.P.*, which applied the state constitution, not the Fifth Amendment of the United States Constitution.  892 A.2d 87 (R.I. 2006).  The defendant's taking did not involve the taking of a public park but rather a taking of land for a financial benefit for a municipal corporation. *Id.* at 106.  Similarly, Plaintiffs' other cited cases rely on interpretation of Colorado, Georgia, Massachusetts, and Pennsylvania laws, not federal, which are inapposite here, as Judge DeArcy Hall recognized.  (DE 44 at 8-10.); *see City of Lafayette v. Town of Erie Urban Renewal Auth.*, 434 P.3d 746, 750-52 (Colo. 2018); *Earth Management, Inc. v. Heard County*, 283 S.E.2d 455, 459 (Ga. 1981); *Pheasant Ridge Associates Ltd. Partnership v.*

*Burlington*, 506 N.E.2d 1152, 1156 (Mass. 1987); *In re Opening a Private Rd. ex rel. O'Reilly*, 5 A.3d 246 (Pa. 2009).

Defendant has also shown the claim was frivolous because there was no ulterior motive for acquiring the property. (DE 49 at 3.) *Goldstein v. Pataki*, 488 F. Supp. 2d 254, 286 (E.D.N.Y. 2007) ("A taking fails the public use requirement [of the Fifth Amendment] if…the asserted purpose of the taking is a mere pretext for an actual purpose to bestow a private benefit."). Defendant argues that Plaintiffs' factual allegation of pretext is mere speculation (DE 49 at 3). Throughout the litigation of this case, Plaintiffs did not put forward any concrete evidence demonstrating that other applicants were subject to different stipulations than them when seeking to develop the property. In fact, the Complaint itself shows quite the opposite—at the meeting, the Southold Town Supervisor stated that building the store would be a concern on "*all* applications in that area." (DE 1 ¶ 41.) (emphasis added). Further, Plaintiffs could have applied for a waiver to the moratorium in an effort to have their permit reviewed but did not take advantage of this path for relief. (*Id*. ¶ 95.) Thus, the undersigned agrees that Plaintiffs' allegation of pretext is speculative.

Indeed, early on Plaintiffs were put on notice of the weakness of their claims on several occasions yet continued to litigate the case. (DE 49 at 6); *cf. Stutchin v. Town of Huntington & Lloyd Harbor*, 71 F. Supp. 2d 76, 106 (E.D.N.Y. 1999) (finding plaintiffs' action not frivolous or that plaintiffs continued to litigate after it clearly became so) (internal quotations omitted). For example, in denying Plaintiffs' preliminary injunction to enjoin Defendant from acquiring the lot, Judge DeArcy Hall emphasized that Plaintiffs failed to allege in their Complaint that Defendant did not intend to build a park on the property or that it would not be used for a public purpose. (DE 28 at 5.) And again, in granting Defendant's motion to dismiss, Judge DeArcy

12

Hall found that Plaintiffs failed to state a claim under the Takings Clause because they did not show that their property was surreptitiously taken to bestow a private benefit, especially since a public park constitutes a "public use."  (DE 44 at 6.)

For these reasons, the undersigned respectfully finds that Defendant was a prevailing party and that Plaintiffs' claims were frivolous, which entitles Defendant to attorney's fees and costs under § 1988.  This conclusion "is consistent with, and furthers the purpose behind, the rigorous standard for awarding attorney's fees under § 1988—that is, it 'avoid[s] chilling the initiation and prosecution of meritorious civil rights actions' while still discouraging meritless litigation."  *Scanlan*, 2023 U.S. Dist. LEXIS 73338, at *17.

### B.  Calculation of Attorney's Fee Award for Defendant

#### a.  Legal Standard

The district court "enjoys broad discretion in determining the amount of a fee award." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 307 (2d Cir. 2011).  The Lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," "creates a 'presumptively reasonable fee.'"  *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).  "A party seeking an award of attorney's fees bears the burden to document 'the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflected, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done.'"  *Bds. Trs. Ins., Annuity, Scholarship, & Apprenticeship Training Funds Sheetmetal Workers' Int'l Ass'n, Loc. Union No. 137 v. Liberty Signs, Inc*., No. 10-cv-1737 (ADS) (AKT), 2011 WL 4374519, at *6 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 4373893 (E.D.N.Y. Sept. 19, 2011).

"In general, courts in this Circuit will not award attorney's fees assessed at a flat-rate unless the supporting documentation is detailed enough to satisfy the Second Circuit's requirement that 'attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work done.'" *Nationstar Mortg. LLC v. Atanas*, 285 F. Supp. 618, 624 (W.D.N.Y. 2018). "The absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances." *OneWest Bank, N.A. v. Denham*, No. CV 14-5529 (DRH) (AKT), 2015 WL 5562980, at *10 (E.D.N.Y. Aug. 31, 2015), *report and recommendation adopted*, 2015 WL 5562981 (E.D.N.Y. Sept. 21, 2015); *U.S. Bank Tr., N.A. v. Dingman*, No. 16-CV-1384 (CS), 2016 WL 6902480, at *6 (S.D.N.Y. Nov. 22, 2016) ("Although the $2,900 requested by [p]laintiff's counsel seems reasonable for the amount of work involved in connection with this foreclosure, the lack of contemporaneous time sheets precludes any such award.").

In order to determine the reasonableness of this request, the Court must undertake a Lodestar analysis. *Ortiz v. New York*, 843 Fed. Appx. 355, 358 (2d Cir. 2021) ("[D]istrict courts evaluating a request for attorneys' fees must conduct a 'lodestar analysis'….). Defendant seeks attorney's fees and costs in the total amount of $206,748.47. In support of the application, counsel has submitted the required affidavits and billing records. (DE 48-2; DE 48-3.) As to the fees portion, Defendant requests a total of $191,264: $138,616 for September 2021; $18,480 for October 2021; $24,584 for November 2021; $2,944 for December 2021; $560 for April 2022; $4,960 for July 2022; and $1,120 for September 2022. (DE 48-3.) In undertaking the Lodestar analysis, the undersigned assesses (1) the reasonableness of the rate billed and (2) the reasonableness of the hours billed.

14

### b.  Whether the Hourly Rates are Reasonable

Defendant requests attorney's fees in the amount of $191,264.  (DE 48-2 at 1.)  Its counsel argues that its fees and costs for this matter have been reduced considerably despite the case's complexity and extensive briefing.  (DE 48 at 7.)  In particular, Defendant's counsel submits that because Defendant is a municipality, counsel has provided Defendant with a "blended" rate, billing all attorneys at the rate of $800 per hour, which according to counsel, is far lower than its normal rates for partners and associates.  (DE 48-2 at 1-2.)  Plaintiffs debate the amount of fees Defendant requests, arguing that Defendant failed to provide adequate support for such high rates so its request for fees should be denied or otherwise significantly reduced.  (DE 50 at 11-13.)

A reasonable hourly rate is "'the rate a paying client would be willing to pay,' based on the 'prevailing [hourly rate] in the community . . . where the district court sits.'"  *E. Sav. Bank, FSB v. Whyte,* No. 13-cv-6111 (CBA) (LB), 2014 U.S. Dist. LEXIS 196448, at *10-11 (E.D.N.Y. Aug. 11, 2014) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2007)).  In assessing a reasonable hourly rate, the court takes into consideration the market rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Gesualdi v. Bestech Transp., LLC*, No. 14-CV-1110 (JS) (ARL), 2022 WL 866853, at *2 (E.D.N.Y. Mar. 23, 2022) ("The party applying for fees must support the hourly rates it claims with, for example, evidence of counsel's expertise and prevailing market rates.").  "The size of the firm may also be considered as a factor if it would affect the hourly rate, 'primarily due to varying overhead costs.'"  *Tatum v. City of New York*, No. 06-cv-4290

(PGG)(GWG), 2010 U.S. Dist. LEXIS 7748, at *13 (S.D.N.Y. Jan. 28, 2010) (quoting *Cioffi v. N.Y. Cmty. Bank*, 465 F.21 Supp. 2d 202, 219 (E.D.N.Y. 2006)).

"In recent years, fees have been awarded in the Eastern District of New York at an hourly rate of $300 to $450 for partners, $100 to $325 for associates, and $70 to $100 for paralegals in fee-shifting cases." *Torcivia v. Suffolk Cty*, 437 F. Supp. 3d 239, 252 (E.D.N.Y. 2020) (quoting *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 212 (E.D.N.Y. 2019)); *see also Haylett v. Sutton*, No. 15-CV-223 (WKF)(PK), 2019 U.S. Dist. LEXIS 134712, at *6-7 (E.D.N.Y. Aug. 8, 2019) ("$300-$450 for partners, $200-$325 for senior associates, and $100-$200 for junior associates"); *Lopez v. Ki Moon Rest. Corp.*, 17-CV-6078 (LDH), 2021 U.S. Dist. LEXIS 17800, at *7 (E.D.N.Y. Jan. 28, 2021) (awarding $400 to founding partner and $325 per hour to senior associate); *Andrews v. City of New York*, No. 14 CV 1721(FB), 2015 U.S. Dist. LEXIS 133645, at *14-15 (E.D.N.Y. Sept. 10, 2015) (surveying various experienced § 1983 attorneys who have charged approximately $300 to $400 per hour). Here, "[t]he highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields." *Torcivia*, 437 F. Supp. 3d at 252 (citing *Feltzin*, 393 F. Supp. 3d at 212) (considering experienced counsel's hourly rate in a § 1983 case).

Defendant's counsel concedes that his firm charges a higher rate, even a higher "blended" rate, than other firms located within this District. (DE 49 at 7.) It also states that this rate is a "very substantial discount from counsel's typical rates" and that the rate has never increased throughout the litigation. (*Id*.)

However, the undersigned finds that even the negotiated blended rate of $800 per hour here is nearly twice as much as the hourly partner rate approved in this District. *See Smith v.*

*City of New York*, 2022 U.S. Dist. LEXIS 55924, at *10 (E.D.N.Y. Mar. 28, 2022) (noting hourly rates for partners in this District for § 1983 cases is $300 to $450); *Culwick v. Wood*, 15 CV 5868 (ENV) (CLP), 2021 U.S. Dist. LEXIS 172442, at *45 (E.D.N.Y. Sept. 9, 2021) (noting $300 to $450 as the reasonable hourly range for partners in this district). Thus, counsel's rates must be lowered to reflect the applicable rates in the Eastern District.

Because of the significantly high rate that Defendant's counsel requests in this District, the undersigned adopts the approach applied in *Trs. Of the Local 1034 Pension Trust Fund*, No. 18 CV 7412 (CBA)(RML), 2019 U.S. Dist. LEXIS 219287, at *16-18 (E.D.N.Y. Dec. 18, 2019), in which the court found that courts in this District rarely approve blended attorney's fees and instead determined the hourly rate for each attorney separately, taking their experience and skill levels into account. *See First Keystone Consultants, Inc. v. Schlesinger Elec. Contrs., Inc.*, No. 10-CV-696(KAM)(SMG), 2013 U.S. Dist. LEXIS 34362, at *21-23 (E.D.N.Y. Mar. 12, 2013) (collecting cases discussing blended rates and tailoring them to the prevailing rates in this District); *Trustees of Leather Goods, Handbags, and Novelty Workers' Union Local 1 Joint Retirement Fund v. Crossbay Seashell Fish Market, Inc.*, No. 19-CV-1722 (RJD) (SMG), 2019 WL 4418884, at *6-7 (E.D.N.Y. Aug. 30, 2019), *report and recommendation adopted*, 2019 WL 4415621 (E.D.N.Y. Sept. 16, 2019) (declining to impose a blended fee for attorneys at Proskauer Rose LLP and instead calculating the fees separately, since one attorney performed the majority of the legal work).

Attorney credentials are to be considered, to wit, "a party moving for attorneys' fees must provide the credentials—law school matriculation, practice area, and years of experience in the relevant practice area—to substantiate the requested hourly rate for each individual." *Desly Int'l Corp. v. Spartak*, No. 13-CV-2303 (ENV) (LB), 2018 WL 4522081, at *8 n.11 (E.D.N.Y. Aug.

1, 2018).  Without this information, "the court may reduce the award [of attorney's fees] accordingly," *Fuchs v. Tara General Contracting, Inc.*, No. 06-CV-1282 (ETB), 2009 WL 3756655, at *1 (E.D.N.Y. Nov. 3, 2009) (citations omitted), since it cannot evaluate what a client in the community would be willing to pay for "reasonably comparable skill, experience and reputation."  *Cruz v. Local Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

In analyzing the reasonableness of the rates, the undersigned also looks to other factors in making its decision that the rate should be lowered, such as the complexity of the matter, including the number of claims in the case, as well as the resources needed to effectively prosecute the case, how demanding the case is and "returns…that an attorney might expect from the representation."  *Tatum v. City of New York*, at *9-10; *Torcivia*, 437 F. Supp. 3d at 252.

Defendant's lawyers practice out of the law firm Pillsbury Winthrop Shaw Pittman LLP. (DE 48-2.)  The partner working on this matter, James Catterson, has been a litigator for 36 years, formerly worked at two other law firms, served as an associate justice of the Appellate Division, First Department of the New York State Supreme Court, and was the Deputy County Attorney for the Suffolk County Attorney as well as an AUSA in this District.  (*Id*. at 1-2.)  His current standard billing rate is $1,350 an hour.  (*Id*. at 2.)  The senior associate working on this matter, Brianna Walsh, litigates complex cases in both state and federal court and typically charges $980 an hour for her services.  (*Id*.)  Finally, the other two associates on the matter, Ryan Adelsperger and Danielle Stefanucci, graduated from law school in 2018 and 2020 respectively, and charge between $700 to $800 an hour.  (*Id*.)

Here, noticeably absent from the application is any description of counsels' *civil rights* litigation experience.  *Cf. Andrews*, 2015 U.S. Dist. LEXIS 133645 at *11 (noting that plaintiff's

counsel "handled over one thousand trials" which involved various cases including Civil Rights violations claims). Instead, Defendant's counsel baldly states that the $800 an hour blended rate is "below market rate for experienced commercial litigators" but fails to provide to supporting case law from within this District that would support such a fee rate.

Furthermore, the issues presented in this case were not unduly complex. *Cf. Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, No. 10 Civ. 2262 (DRH) (AYS), 2019 U.S. Dist. LEXIS 102840, at *18, 34-35 (E.D.N.Y. June 18, 2019), *report & recommendation adopted*, 2019 U.S. Dist. LEXIS 111538 (E.D.N.Y. July 3, 2019) (noting that long complex cases litigated by well-experienced counsel warrant a higher hourly rate and awarding a $600 hourly rate for certain attorneys in civil rights matter). Rather, the case consisted of a single claim of a taking under the Fifth Amendment. (DE 1 at 22.) There was also no discovery conducted in this case, which would have incurred additional costs, since discovery was stayed pending resolution of the motion to dismiss. (DE 32.)

For these reasons, the undersigned recommends a partner rate slightly lower than the requested blended rate;[3] a senior associate rate similar to the rate of counsel in this District; and a mid- and junior-level associate rate closer to the general fee awards given in this District. Accordingly, the undersigned recommends the following rates for the lawyers in this case[4]:

---

[3] The undersigned recommends and finds a slightly higher rate than that normally awarded in the Circuit is warranted given the partner's extensive experience notwithstanding that the case lacked particular complexity. *See Rosario v. City of New York*, No. 18 Civ. 4023 (LGS), 2023 U.S. Dist. LEXIS 43952, at *8, 17 (S.D.N.Y. Mar. 15, 2023) (awarding a rate of $900 per hour for partner involved in civil rights litigation suit that lasted four years); *Stollman v. Williams*, No. 20-CV-8937 (JPC)(KNF), 2021 WL 5910438, at *5 (S.D.N.Y. Dec. 10, 2021) (awarding counsel $700 per hour in fees because of their almost 50 years' worth of experience in civil rights litigation basing this decision on the attorneys' "knowledge, skills, abilities, experience, and reputation"); *HomeAway.com, Inc. v. City of New York*, 18 Civ. 7742 (PAE), 523 F.Supp.3d 573, 597 (S.D.N.Y. 2021) (finding $650 per hour rate for partner at Gibson Dunn to be reasonable given complexity of case and sophisticated work performed in civil rights arena).

[4] These rates are consistent with other fee awards to Pillsbury lawyers in other cases in the metro-New York area. *See, e.g., Top Jet Enterprises, Ltd. v. Kulowiec*, No. 21-MC-789 (RA) (KHP), 2022 WL

19

- James M. Catterson: $700 per hour

- Brianna Walsh: $600 per hour

- Ryan R. Adelsperger: $500 per hour

- Danielle M. Stefanucci: $400 per hour

Having decided what rates each of the attorneys would receive, the undersigned next

analyzes whether the hours billed for this matter were reasonable.

### c. Whether the Hours Billed are Reasonable

Plaintiffs take issue with Defendant's counsels' "block billing" and application of clerical

tasks such as preparation and coordination of filings and requests an across-the-board reduction.

(DE 50 at 14-15.)

The party seeking attorney's fees has the burden to demonstrate that the number of hours

is reasonable. *Torcivia*, 437 F. Supp. 3d 239, 253.  Courts may reduce the hours if they are

"excessive, redundant or otherwise unnecessary." *Id.* (internal citations omitted).  The

reasonable number of hours spent on a case "is fact and context specific," so the inquiry is

"committed to the discretion of the court." *Tatum*, 2010 U.S. Dist. LEXIS 7748 at *25 (quoting

*Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).

Block-billing is frowned upon, since it amounts to "the lumping together of discrete tasks

with others that are not clearly defined, which makes it difficult for the court to allocate time to

---

1184245, at *2-4 (S.D.N.Y. Apr. 21, 2022) (awarding Pillsbury partners $825 per hour, senior associates $475 per hour, and associates $300 per hour only in connection with a motion to compel); *Citigroup Inc. v. Seade*, No. 21 Civ. 10413 (JPC), 2022 WL 1205599, at *1-2 (S.D.N.Y. Mar. 15, 2022) (awarding an hourly of $840 rate to a Pillsbury partner and $480 to Adelsperger, representing a significant discount from their standard rates in connection with a motion for contempt); *Flatiron Acquisition Vehicle, LLC v. CSE Mortgage LLC*, No. 1:17-cv-8987-GHW, 2022 WL 413229, at *14 (S.D.N.Y. Feb. 9, 2022) (awarding Pillsbury partners' fees in the range of $742 to $910 per hour and $405 to $660 per hour for associates for a particularly complex case).

individual activities in order to gauge the reasonableness of time expended on each activity." *Douvon v. New York Medical Health Care, P.C.*, 49 F. Supp.3d 328, 350 (E.D.N.Y. 2014).

Where the records submitted in support of a fee application are vague, duplicative, contain block-billing or other deficiencies, it is well within the Court's discretion to consider an "across the board" percentage reduction.  And that's because "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  "The court may also 'reduce an attorney's hourly rate for time spent on clerical tasks or apply an across-the-board reduction . . . to account for time spent on clerical tasks (or block-billed time entries reflecting a mix of clerical and legal work),' although the 'court is not required to make such reductions.'"  *Raja v. Burns,* 43 F.4th 80, 87 (2d Cir. 2022).  Plaintiffs ask the Court to do just that.

Plaintiffs have pointed to several clerical tasks and entries that entail block-billing. Namely they point to entries that include coordination of filings and service coupled with drafting and editing of substantive motions.  (DE 50 at 15.); *see also Torcivia*, 437 F. Supp.3d at 253 (noting that examples of clerical tasks include "sending and receiving faxes, requesting and receiving medical records, serving papers, and hand-delivering courtesy copies of filings to the courthouse…and preparing a summons and complaint for service, ECF filings, entering dates into a calendar, and communications regarding ordering a court reporter") (internal citations omitted).

The undersigned notes that the number of hours spent on this case reflect reviewing documents for this case, preparing updates to the client and to the court, attending court conferences, and drafting various oppositions and motions.  (DE 48-3.)  For example, on June 10, 2021, Adelsperger spent 2.5 hours reviewing the complaint, performing research related to

the motion to dismiss, and putting together a motion to dismiss outline. (*Id.* at 3.).  And from October 6, 2021 through October 8, 2021, Stefanucci expended over 3 hours reviewing and revising the motion to dismiss.  (*Id.* at 10.); (*see also* DE 48-3 (6/14/21; 6/15/21; 6/25/21; 11/11/21; 11/12/21; 11/15/21)).  The undersigned finds the number of hours expended on these tasks to be reasonable.

However, the undersigned has carefully reviewed the time sheets submitted, considered the deficiencies noted above and concludes an across-the-board reduction is indeed appropriate for the clerical tasks and block billing.[5]  There are several entries in the attorneys' contemporaneous billing records that combine tasks, including clerical tasks, into one entry, such as coordinating filings, conversing with the Managing Attorney's Office, and preparing documents for service. (*See, e.g.,* DE 48-3 (6/15-6/16/21, 6/23/21, 6/29/21, 7/19/21, 7/23/21, 8/11/21, 8/30/21, 9/21-9/22/21, 10/25-10/28/21, 11/4/21, 11/9/21, 11/16-11/17/21, 11/19/21, and 7/13/21)).  These examples are not meant to be an exhaustive list.

The work performed was extensive and the results achieved justify a reasonable fee award with an across-the-board reduction of 20% to account for most of the deficiencies since some block-billed entries appear to be reasonable.  *See Safeco Ins. Co. of Am. V. M.E.S., Inc.*, 790 Fed. Appx. 289, 292 (2d Cir. 2019) (finding that some block billing entries are permissible to the extent they do not impair the court's ability to assess the reasonableness of fees and hours billed); *Raja*, 43 F.4th at 84 (finding a 40% reduction to be excessive since the district court

---

[5] The undersigned notes that counsel in cases seeking fee awards should know better by now as to what it expected, allowed and disallowed by the courts on fee applications.  That is, contemporaneous time sheets should be prepared accordingly to avoid these pitfalls and ultimate reductions: assign administrative tasks to paralegals, avoid "block-billing" and the like.  *See Bozdogan v. 23 Ludlam Fuel, Inc.*, 16-CV-1052 (JMW), 2022 U.S. Dist. LEXIS 233168, at *11-12 (E.D.N.Y. Dec. 29, 2022) (applying an across-the-board reduction of 15% where counsel performed administrative or paralegal tasks or block-billed for a number of tasks).

could examine block-billed entries for reasonableness and the work resulted in a favorable result for the client).

After calculating the number of hours in the contemporaneous billing records multiplied by the hourly rates per attorney listed above, the total number of attorney's fees for all Pillsbury counsel is $127,626:

| Attorney | Position | Time Worked | Hourly Rate Awarded | Total |
|---|---|---|---|---|
| James M. Catterson | Partner | 17.66 | $700 | $12,362 |
| Brianna Walsh | Senior Associate | 98.93 | $600 | $59,358 |
| Ryan R. Adelsperger | Associate | 69.1 | $500 | $34,550 |
| Danielle M. Stefanucci | Associate | 53.39 | $400 | $21,356 |

Applying the 20% across-the-board reduction, the undersigned respectfully recommends Defendant's counsel be awarded $102,100.80 in attorney's fees. In recommending these amounts, the undersigned considered the quality of the work performed, the degree of complexity, as well as the attorneys' individual experiences and credentials.

### C. Costs for Defendant

Finally, the undersigned considers what costs, if any, should be awarded to Defendant's counsel. Here, Defendant's counsel requests costs in the amount of $15,484.47 (DE 48-2), while Plaintiffs objects noting there is little explanation of what these costs actually entail, especially with respect to the computer research fees. (DE 50 at 16.)

Fed. R. Civ. P. 54(d)(1) provides district courts with discretion to provide costs to prevailing defendants unless a federal statute states otherwise. *Torcivia*, 437 F. Supp. at 249 (internal citations omitted). The party moving for costs must show "the reasonableness of each

charge; failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery." *Andrews*, 2015 U.S. Dist. LEXIS 133645 at *37. The unsuccessful party has the burden to show that costs should not be awarded to the prevailing party. *Torcivia*, 437 F. Supp. at 249.

When deciding to deny costs, courts consider if they find there was "misconduct by the prevailing party, the public importance of the case, the difficulty of the issues, or the losing party's limited financial resources." *Id.* (citing *Carter v. Inc. Vill. of Ocean Beach*, No. 07 CV 1215 (SJF)(ETB), 2013 U.S. Dist. LEXIS 31517, at *2 (E.D.N.Y. Mar. 4, 2013).

Recoverable costs include photocopying, travel, telephone costs, and filing fees. *LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir. 1998); *T.S. Haulers, Inc. v. Cardinale*, No. 09 CV 0451 (SJF)(ARL), 2011 U.S. Dist. LEXIS 9578, at *13 (E.D.N.Y. Jan. 31, 2011) (granting $829.03 in costs to defendants who incurred expenses for postage and copying).

The costs in the instant matter include computer research, document processing, reproductions, and the mailing of various documents. (DE 48-3.) Plaintiffs contend that the computer research costs for more than $14,000 are ambiguous and Defendant's counsel has not properly documented such costs. (DE 50 at 16.)

The Second Circuit has stated that online research charges can be recovered if the firm regularly bills its clients for them. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 98 (2d Cir. 2004) (noting that online research charges that are normally billed to paying clients should be included in a fee award); *see also Landstar Sys. Am. v. Landstar Logistics Corp.*, No. 15 Civ. 7179 (KAM) (VMS), 2020 U.S. Dist. LEXIS 21774, at *32-33 (E.D.N.Y. Feb. 6, 2020) (applying *Arbor Hill* and rejecting legal research costs because it

was unclear whether plaintiff was billed for these costs).  Nowhere in Defendant's submission

can it be gleaned whether the firm regularly bills its clients for legal research.

However, some courts in this District have declined to award legal research costs in some

cases since such fees are or should be accounted for in the attorney's time billed. *See Hernandez*

*v. NJK Contrs., Inc.*, No. 09-CV-4812 (RER), 2015 U.S. Dist. LEXIS 117853, at *13 (E.D.N.Y.

Sept. 3, 2015) (noting that courts in this District have previously found that prevailing parties are

not permitted to recover Westlaw and LexisNexis research fees because they would constitute "a

substitute for an attorney's time that is compensable under an application for attorneys' fees….")

(quoting *United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*,

95 F.3d 153, 173 (2d Cir. 1996)); *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d

274, 300 (E.D.N.Y. 2009) (declining to award Westlaw research fees because plaintiff did not

provide any documentation from Westlaw demonstrating entitlement to those fees).

Here, Defendant's counsel fails to provide *any* documentation entitling it to computer

research fees.  It simply states "Computer Research" on its invoices but has failed to attach

Westlaw or LexisNexis receipts, or to indicate if they bill their client a regular flat research fee.

(DE 48-3.); *cf. Amaprop Ltd. v. Indiabulls Fin. Servs.*, 10 Civ. 1853 (PGG), 2011 U.S. Dist.

LEXIS 27035, at *28-29 (S.D.N.Y. Mar. 16, 2011) (granting legal research costs of over $10,000

because plaintiff provided sufficient documentation, including invoices from LexisNexis and

Westlaw).  Further, counsel only lists "Computer Research" without a summary on the billing

records, making it unclear whether this constituted *only* LexisNexis and Westlaw research or

encompassed other research databases as well.  (*See* DE 48-3 at 8, 14, 17); *Dimopoulou v. First*

*Unum Life Ins. Co.*, No. 1:13-cv-7159 (ALC), 2017 U.S. Dist. LEXIS 15944, at *12-13

(S.D.N.Y. Feb. 3, 2017) (declining to award certain costs where research was unrelated to the

electronic research in this case and included "impermissibly vague" miscellaneous costs). Thus, because the undersigned is unable to determine to whether these computer costs were warranted due to lack of documentation, the undersigned respectfully recommends denying costs for computer research of $14,871.50. However, the undersigned respectfully recommends the remaining $612.97 for costs related to document processing, reproduction, and mailing court documents be awarded to Defendant's counsel due to their reasonableness.

## **CONCLUSION**

For the reasons stated herein, the undersigned respectfully recommends that the Defendant's counsel's motion for fees and costs (DE 48) be granted as follows:

- Attorney's fees………… $102,100.80

- Reimbursable costs……. $612.97

- For a total of……………**$102,713.77.**

## **OBJECTIONS**

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any

further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan &*

*Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:      Central Islip, New York
            June 20, 2023

                                        RESPECTFULLY RECOMMENDED,

                                        /S/ *James M. Wicks*

                                        JAMES M. WICKS
                                        United States Magistrate Judge